**CHILKAT INDIAN VILLAGE, a Federally Recognized Indian Tribe, Plaintiff,**

v.

**Michael R. JOHNSON, an Individual, Michael R. Johnson, Inc., a Profit Corporation Incorporated in the State of Washington, and Clarence Hotch, Mildred Sparks (Deceased), Margaret Thomas, Wesley Willard, Evans Willard, David Light, Ron Sparks, Raymond Light, Irene Rowan, Clifford Thomas, William A. Thomas, Jr., Christine Martin, Mia Rowan, and Rochene Rowan, Individual Members of the "Whale House Group", Defendants,**

**and**

**State of Alaska, Intervenor-Defendant.**

**No. J84-024 Civil.**

United States District Court, D. Alaska.

Sept. 15, 1986.

Janine Reep, Donald Cooper, Heather H. Grahame, Vance Sanders, Alaska Legal Services, Anchorage, Alaska, for plaintiff.

Donna C. Willard, Willoughby & Willard, Anchorage, Alaska, for defendants.

Douglas K. Mertz, Asst. Atty. Gen., Harold M. Brown, Atty. Gen., Juneau, Alaska, for intervenor-defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

This matter is before the court on the court's request for briefing with re-

---

spect to whether plaintiff's third cause of action should be dismissed for want of subject-matter jurisdiction. The court suggested that the third cause of action rests on a statute that provides no private right of action. Such a defect in a plaintiff's cause of action is jurisdictional in nature. *Oldfield v. Athletic Congress*, 779 F.2d 505, 508 (9th Cir.1985). Plaintiff declined the invitation to brief this issue.

■ Plaintiff's third cause of action is founded on a criminal statute prohibiting embezzlement and theft from Indian tribal organizations, 18 U.S.C. § 1163. The count alleges that certain defendants violated the statute by arranging the removal of certain artifacts from plaintiff's possession. One Federal District Court has held that an implied private right of action exists under § 1163 in favor of a tribe. *Cheyenne-Arapaho Tribes of Oklahoma v. Beard*, 554 F.Supp. 1, 4 (W.D.Okla.1980).

This court disagrees with the Oklahoma court. Under recent Supreme Court doctrine the implication of a private right of action turns on a single central inquiry: "whether Congress intended to create ... a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *see also, e.g., Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) ("[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (despite emphasis in earlier opinions on desirability of finding private remedy, recent cases show that basic question is one of congressional intent); *Limongelli v. Postmaster General*, 707 F.2d 368, 371–72 (9th Cir.1983); Note, *State Incorporation of Federal Law: A Response to the Demise of Implied Federal Rights of Action*, 94 Yale L.J. 1144, 1144–47 (1985). Section 1163 was enacted as a lone provision in 1956. Nothing in its language or structure suggests that Congress intended to create anything more than criminal liability.[1] Its legislative history is quite brief: it was enacted with no debate and with minimal amendment. 102 Cong.Rec. H 11599–600 (daily ed. July 2, 1956), S 13921 (daily ed. July 23, 1956). The Senate Report on the bill states that its purpose was "to provide a [federal] criminal penalty" for theft or conversion of Indian property, owing to difficulties that had been encountered in bringing criminal actions for such offenses in tribal courts. S.Rep. No. 2723, 84th Cong., 2d Sess. (1956), *reprinted in* 1956 U.S.Code Cong. & Ad.News 3841; *see also* H.R.Rep. No. 2427, 84th Cong., 2d Sess. at 2 (1956) ("adequate Federal penal safeguards are necessary"). Neither committee report alludes to private civil liability.

Perhaps the most significant aspect of the legislative history of § 1163 is the statement in the Senate Report that "[t]he terms of the bill are modeled upon such existing criminal laws as sections 641, 656,

1. The section reads:
Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization; or
Whoever, knowing any such moneys, funds, credits, goods, assets, or other property to have been so embezzled, stolen, converted, misapplied or permitted to be misapplied, receives, conceals, or retains the same with intent to convert it to his use or the use of another—

Shall be fined not more than $5,000, or imprisoned not more than five years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both.
As used in this section, the term "Indian tribal organization" means any tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws.
18 U.S.C. § 1163 (1982)

and 660 of title 18 of the United States Code." S.Rep. No. 2723, 1956 U.S.Code Cong. & Ad.News 3842, *supra.* None of these provisions has ever been held to confer a private right of action. Indeed, the most closely parallel provision has been expressly held not to confer such a right. *Jenkins v. Fidelity Bank,* 365 F.Supp. 1391, 1399 (E.D.Pa.1973) (§ 656); *cf. Walter T. Martin, Inc. v. Peoples Gas Light and Coke Co.,* No. 85 C 9728 (N.D.Ill.1986) (Westlaw, Allfeds database) (§ 641). Notably, this was the state of the law in 1956, when Congress enacted § 1163. *See Whittemore v. Amoskeag National Bank,* 134 U.S. 527, 530, 10 S.Ct. 592, 593, 33 L.Ed. 1002 (1890) (interpreting predecessor to § 656). The Supreme Court has held that it is appropriate, when determining whether Congress intended to create a private right of action, to assume that Congress knew the law regarding existing statutes after which the new provision was patterned—including whether courts had construed the existing statutes as creating private remedies. *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). The fact that no private remedies had been implied for sections 641, 656, and 660 is therefore evidence that, in enacting similar language in § 1163, Congress did not contemplate such remedies. *See id.* at 697–98, 99 S.Ct. at 1958.

 Of course, the Oklahoma court is correct in observing that implication of a private right of action under § 1163 would presumably further the objective of protecting tribes from dishonesty and theft. But the mere fact that some additional measure dreamed up by a court would further an objective of a statute does not mean that, in enacting the statute, Congress intended to adopt the additional measure. *See Brill v. Northern California Savings and Loan Association,* 555 F.Supp. 566, 573 (N.D.Cal.1982). Tangible evidence of Congress's intent is necessary to overcome the presumption that where a private remedy was omitted from statutory language, the omission was intentional. *See, e.g., Middlesex County Sewerage Au-*

*thority v. National Sea Clammers Association,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981); *Osborn v. American Association of Retired Persons,* 660 F.2d 740, 745–46 (9th Cir.1981).

Accordingly, IT IS ORDERED that the third cause of action of plaintiff's Second Amended Complaint is dismissed.